IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

WILLIAM E. PACKARD, JR.                                                              PETITIONER

v.                                    NO. 2:06CV00177 HDY

LINDA SANDERS, Warden, FCI                                                        RESPONDENT
Forrest City, Arkansas

MEMORANDUM OPINION AND ORDER

The record reflects that in May of 1996, officers with the Kansas City, Kansas, Police Department received information that petitioner William E. Packard, Jr., ("Packard") was manufacturing methamphetamine at a mobile home in the area. On the basis of that information, the officers obtained a warrant to search the mobile home. The officers subsequently conducted a search of the mobile home and uncovered, <u>inter alia</u>, components of a methamphetamine laboratory; numerous firearms, including a rocket launcher; and identification documents belonging to Packard.[1]

---

[1] Daniel R. Severson, a Federal Bureau of Prisons Paralegal Specialist, represents in a declaration that the officers found the firearms while conducting a search of Packard's "residence." See Document 4, Declaration of Daniel R. Severson at 2. Packard objects to the characterization of the mobile home as his "residence," specifically noting that he lived elsewhere and had not stayed overnight at the mobile home for some time. For purposes of the Findings and Recommendation, the Court will simply refer to the structure as the "mobile home."

In January of 2000, Packard was charged by indictment in the United States District Court for the District of Kansas with the following offenses: (1) attempt to manufacture a controlled substance (methamphetamine), (2) conspiracy to manufacture a controlled substance (methamphetamine), and (3) possession of a chemical with the intent to manufacture a schedule II controlled substance (methamphetamine). In June of 2000, he pleaded guilty to the three offenses. In September of 2000, he was sentenced by United States District Judge Carlos Murguia to three concurrent 180 month terms of imprisonment in the custody of the Federal Bureau of Prisons ("BOP"). Packard was committed to the custody of the BOP in December of 2000.[2]

Upon Packard's entry into the custody of the BOP, Daniel R. Severson ("Severson"), a BOP Paralegal Specialist, represents that the following occurred:

> ... [BOP] staff initiated the classification process to determine the appropriate level [of] correctional facility to designate ... Packard [to] for service of his federal sentence. Review of the Pre-Sentence Investigation Report pertaining to ... Packard's current criminal conduct revealed law enforcement officials found numerous firearms (including a **ROCKET LAUNCHER**) while conducting a search of [the mobile home]. ...
>
> At the conclusion of the classification process, ... Packard was given a Custody Classification Score of low security with in custody. However, based upon ... Packard's documented history of weapons possession, he was assigned a Greater Security Management Variable. ...

---

[2] Although Packard was committed to the custody of the BOP at that time, it appears that he did not begin serving his "current federal sentence [until] September [of] 2005." See Document 4, Declaration of Daniel R. Severson at 3. It is not clear from the record why he did not begin serving his current federal sentence until then, but the clarification of that matter is not necessary to fully resolve the dispute at bar.

See Document 4, Declaration of Daniel R. Severson at 2. The BOP staff assigned Packard a Greater Security Management Variable pursuant to the provisions of BOP Program Statement ("PS") 5100.07, which was adopted in September of 1999. See Document 4, Attachment 5.[3] He subsequently came to be housed in the specific custody of respondent Linda Sanders ("Sanders") at the Federal Correctional Complex - Low Security Institution in Forrest City, Arkansas ("FCC Forrest City").

At some point, Packard began an attempt to have the Greater Security Management Variable removed from his Custody Classification Score so that he could transfer to a minimum security, or "camp," facility. It was, and continues to be, his position that the mobile home was never his residence; that the firearms found inside the mobile home did not belong to him; that he was never charged with possessing the firearms; that other prisoners convicted of firearm-related offenses, or having firearm notations in their Pre-Sentence Investigative Reports, have received transfers to "camp" facilities; and that he has maintained an excellent institutional record. He first sought informal discussion and resolution of his complaint with the staff at FCC Forrest City as required by the BOP grievance procedure. In December of 2005, a prison counselor and the acting unit manager provided Packard with the following response to his complaint:

---

[3] A management variable is sometimes added to a prisoner's classification score to ensure that he is designated to "the most appropriate level institution." See Document 4, Declaration of Daniel R. Severson at 3. The management variable is required when a prisoner's placement has been made or maintained at "an institution level inconsistent with [the prisoner's] scored security level." See Id.

> A review of this matter reveals the following. On December 14, 2004, you were submitted for camp placement at FCC Forrest City and denied by the Warden. You were again denied camp placement at SCP Leavenworth by the South Central Regional Office on June 3, 2005, because of weapons involvement. According to your Presentence Investigation Report, Officers found numerous firearms including a rocket launcher at a residence which contained identification documents that belong to you. Because of these recent denials, your Unit Team is not recommending camp placement at this time. …

See Document 1, Exhibit A, Response of D.M. Wilson and Mike Danaher dated December 21, 2005.

Packard next formally complained to officials at FCC Forrest City. In January of 2006, Sanders rejected his complaint and provided him with the following reason for her decision:

> A review of this matter reveals the following. On December 14, 2004, you were submitted for camp placement at FCC Forrest City and denied due to weapons involvement in your current offense behavior. On June 3, 2005, you were again denied camp placement by the South Central Regional Office, because of weapons involvement. According to your Presentence Investigation Report, officers found numerous firearms including a rocket launcher at a residence where identification belonging to you was located. Additionally, you express concerns regarding other inmates with weapons violations who have been approved for Camp placement. Inmates who are approved for community corrections placement and are nearing release may be approved for intermediate camp placement despite their weapons' offenses. You do not qualify for intermediate camp placement as your release date is November 24, 2012, via Good Conduct Time Release. Based on this information, your Unit Team is not recommending camp placement at this time.

See Document 1, Exhibit B, Response of Linda Sanders dated January 19, 2006.

Packard appealed the denial of his complaint to a BOP Regional Director. In March of 2006, Regional Director G. Maldonado, Jr., rejected Packard's complaint and provided him with the following explanation:

> We have thoroughly reviewed your appeal. Program Statement 5100.07, Security Designation and Custody Classification, states the intent of the security and custody classification system is to allow staff to use professional judgment within specific guidelines to determine the most appropriate institution assignment for an inmate. The system allows staff to ensure all characteristics of an inmate's case are considered in decisions regarding security and custody classification. In determining an inmate's appropriateness for transfer to a minimum security Camp facility, we place heightened emphasis on ensuring the individual would not present a potential threat to community safety or a risk of escape.
>
> We have thoroughly assessed all relevant factors in your case and affirm the previous decision to deny you Camp placement. Although your current Custody Classification form reflects you are a minimum security inmate, a Greater Security Management Variable has been applied to your scoring to reflect increased security needs in your case. Based on a review of your Presentence Investigation Report, officers located numerous firearms, including a rocket launcher, at a residence where your identification documents were also located.

See Document 1, Exhibit C, Response of G. Maldonado, Jr., dated March 2, 2006.

Packard appealed the denial of his complaint to the BOP Office of National Inmate Appeals. In April of 2006, Harrell Watts, an Administrator with the Office of National Inmate Appeals, rejected Packard's complaint and provided him with the following explanation:

> The issue of transfers is left to the discretion of the Warden and Regional Director per Program Statement 5100.07, <u>Security Designation and Custody Classification</u>.  The intent of P.S. 5100.07 is to allow staff to use professional judgment within specific guidelines.  Several factors are considered when determining an inmate's appropriateness for transfer including the inmate's security needs, current offense, disciplinary record, release destination, and population pressures.
>
> Staff reviewed your suitability for camp placement and determined you required greater security than what is afforded at a [m]inimum security facility.  This decision was based upon your instant offense that involved the location of numerous firearms, including a rocket launcher, at a residence with identification belonging to you.  Our review finds you are properly scored as a Low Security inmate with In custody and appropriately housed at FCI Forrest City. ...  You should not compare your case to other inmates as each case is considered on its own merit. ...

<u>See</u> Document 1, Exhibit D, Response of Harrell Watts dated April 28, 2006.

In August of 2006, Packard commenced the proceeding at bar by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2241.  He maintained that he has been erroneously assigned a Greater Security Management Variable.  He asked the Court to remove the Greater Security Management Variable or allow him to transfer to a "camp" facility; alternatively, he asked that the BOP provide him with an explanation as to why the Greater Security Management Variable remains and how he can have it removed.

In September of 2006, Sanders filed an answer to Packard's petition.  Sanders maintained, in sum, that Packard has been properly assigned a Greater Security Management Variable because of his "prior weapons history."  <u>See</u> Document 4 at 3.  Sanders thus maintained that Packard was not entitled transfer to a "camp" facility.

In September of 2006, Packard filed a response to Sanders' answer. His response was instructive for at least one reason. Packard maintained that PS 5100.07 was superseded by PS 5100.08 in September of 2006. He additionally maintained that PS 5100.08 limited Greater Security Management Variables to twenty-four months.

The Court then reviewed the record in this proceeding. Because the Court had several questions about the two Program Statements, Sanders was ordered to submit a reply in which she addressed those questions.[4]

In October of 2006, Sanders submitted her reply. It consisted almost entirely of Severson's supplemental declaration. In that submission, he represented the following:

> [BOP] Program Statement 5100.08 (Inmate Security Designation and Custody Classification), was issued effective September 12, 2006. Effective with the issuance of Program Statement 5100.08 ... Program Statement 5100.07 (Security Designation and Custody Classification ...) was rescinded.
>
> The Greater Security Management Variable presently assigned to ... Packard was issued on February 3, 2006 ...

---

[4]

The questions were as follows:

First, has PS 5100.07 been superseded by PS 5100.08?

Second, if not, what is the expiration date for a Greater Security Management Variable under PS 5100.07?

Third, if PS 5100.07 has been superseded by PS 5100.08, is the Greater Security Management Variable presently assigned to Packard still governed by the provisions of PS 5100.07?

Fourth, if the Greater Security Management Variable presently assigned to Packard is governed by the provisions of PS 5100.08, when did the twenty-four month period commence?

> The Greater Security Management Variable assigned to … Packard on February 3, 2006 remains effective at this time. In accordance with the provisions of new Program Statement 5100.08 …, all inmate classification decisions and related actions will be made in accordance with the provisions of the new Program Statement. However, implementation of those inmate classification decisions and related actions shall occur in accordance with the inmate's next regularly scheduled custody review …
>
> As stated above, … Packard's previous custody review occurred on February 3, 2006. Therefore, implementation of all inmate classification decisions and related actions in accordance with the new Program Statement shall occur at … Packard's next regularly scheduled custody review, which will occur on or before February 3, 2007.
>
> At … Packard's regularly scheduled custody review, which shall occur on or before February 3, 2007, [BOP] staff will review … Packard's case, and make a recommendation to the Administrator of the Dallas Sentence Computation Center (DSCC), concerning his need for a Greater Security Management Variable. The DSCC Administrator will review the recommendation, and make a final determination whether or not to continue applying a Greater Security Management Variable to … Packard.
>
> In the event the DSCC Administrator applies a Greater Security Management Variable to … Packard, an expiration date for that Greater Security Management Variable will be assigned in accordance with the provisions of Program Statement 5100.08 …
>
> In accordance with the provisions of Program Statement 5100.08 …, a Management Variable for Greater Security requires up to a 24 month expiration date …

See Document 15-2, Supplemental Declaration of Daniel R. Severson at 1-3.

The Court has again reviewed the record in this proceeding, including the provisions of PS 5100.07 and PS 5100.08. On the basis of that review, the Court makes the following disposition of this proceeding.

In turning to address the proceeding at bar, the Court makes note of one preliminary matter. It is axiomatic that a prisoner has "no constitutional right to placement in a particular penal institution." See Antonelli v. Sanders, 2006 WL 667964 at 2 (E.D.Ark. 2006) [citing Olim v. Wakinekona, 461 U.S. 238 (1983)]. With regard to a prisoner's classification status, it appears to be well settled that the prisoner has "no legitimate statutory or constitutional entitlement sufficient to invoke due process." See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). Instead, transfers and prison assignments are typically functions within the wide discretion of the BOP. See Olim v. Wakinekona, supra.

It is against the backdrop of the foregoing that the Court turns to address the proceeding at bar, one governed by PS 5100.07 and its successor, PS 5100.08. The purpose of the Program Statements is the same: establish a set of guidelines for classifying prisoners within the custody of the BOP. In order to ensure a prisoner's placement in the most appropriate security level institution, the BOP makes use of management variables. PS 5100.08 describes a management variable in the following manner: "A [m]anagement [v]ariable is required when placement has been made and/or maintained at an institution level inconsistent with the [prisoner's] scored security level." See PS 5100.08, Chapter 5 at 1. One of the management variables identified in both Program Statements is "Greater Security." In PS 5100.08, the Greater Security Management Variable is identified as follows:

> There may be security concerns which are not adequately reflected in the classification scheme. In circumstances where an inmate represents a greater security risk (i.e., pending charges, detainer, escape risk, etc.) than their assigned security level, they may be placed in an institution outside normal guidelines, and this [Management Variable] will apply. ...

See PS 5100.08, Chapter 5 at 5. In PS 5100.07, the Management Variable Expiration Table provided that the length of the Greater Security Management Variable was "[a]t the discretion of the Regional Director upon recommendation from [the] institution staff [and could] be extended indefinitely." See PS 5100.07, Chapter 7 at 15. In PS 5100.08, the Management Variable Expiration Table provides that the length of the Greater Security Management Variable is for twenty-four months.

For purposes of this Memorandum Opinion and Order, the Court accepts as true most, if not all, of the factual representations made by Packard. For instance, the Court accepts as true that the mobile home was never his residence; that the firearms found inside the mobile home did not belong to him; that he was never charged with possessing the firearms; that other prisoners convicted of firearm-related offenses, or having firearm notations in their Pre-Sentence Investigative Reports, have received transfers to "camp" facilities; and that he has maintained an excellent institutional record. For the reasons that follow, the Court will not direct the BOP to remove the Greater Security Management Variable presently assigned to him, will not order his transfer to a "camp" facility, and will not direct the BOP to provide him with an explanation as to why the Greater Security Management Variable remains and how he can have it removed.

First, with regard to whether the mobile home was ever Packard's residence and whether the firearms found inside the mobile home actually belonged to him, those objections should have been raised by Packard during his sentencing hearing before Judge Murguia. It is too late in the day to be objecting to information contained in the Pre-Sentence Investigate Report. Second, it is irrelevant to this proceeding that Packard was never charged with possessing the firearms found inside the mobile home. The decision to charge him for that, or any, offense is left to the United States Attorney and the presiding Grand Jury. Third, with regard to whether other prisoners convicted of firearm-related offenses, or having firearm notations in their Pre-Sentence Investigative Reports, have received transfers to "camp" facilities, Packard has failed to show that his situation is substantially similar to those of the unidentified prisoners. It is possible that his situation is substantially dissimilar to those other situations. Last, the Court has no doubt that he has maintained an excellent institutional record. It is clearly something the BOP should consider at his next regularly scheduled custody review; it is not something the Court can consider in the context of the proceeding at bar.

For the foregoing reasons, the Court cannot say that Packard was improperly assigned a Greater Security Management Variable pursuant to the provisions of PS 5100.07. The assignment is surely within the wide discretion afforded the BOP in classifying prisoners. It appears, however, that at his next regularly scheduled custody review, his situation will be governed by the provisions of PS 5100.08.

In conclusion, the Court finds that the decision to assign Packard a Greater Security Management Variable was within the wide discretion afforded the BOP in classifying prisoners. His petition is therefore denied and dismissed with prejudice, and judgment will be entered for Sanders.

IT IS SO ORDERED this ___30___ day of October, 2006.

_____
UNITED STATES MAGISTRATE JUDGE